IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

      v.

$110,000 IN UNITED STATES
CURRENCY,

                Defendant.

Case No. 21 C 981

Judge Harry D. Leinenweber

### MEMORANDUM OPINION AND ORDER

Non-party William Madden moves, pursuant to FED. R. CIV. P. 45(c), to quash the subpoena issued by the United States District Court for the District of Nebraska in the case *United States v. $110,000 U.S. Currency,* No. 19-cv-531 (D. Neb.). (Dkt. No. 5.) The Government has moved, pursuant to FED. R. CIV. P. 45(g) for an order to show cause (Dkt. No. 2.) For the reasons set forth herein, Madden's motion is denied. Madden shall respond to the subpoena on or before July 12, 2021. The Government's motion for an order to show cause (Dkt. No. 2) is denied without prejudice as moot.

## I. BACKGROUND

This dispute arises out of a third-party subpoena issued to movant William Madden in connection with a civil forfeiture action pending in the United States District Court for the District of Nebraska, captioned *United States v. $110,000 U.S. Currency,* No.

19-cv-531 (D. Neb.) (the "Nebraska Action"). On June 18, 2019 Nebraska law enforcement stopped a Chevrolet Suburban driven by Ali Abbasi, with Julio Martinez as a passenger. (Mot. for Order to Show Cause ¶ 1, Dkt. No 2.) Following a search of the vehicle, law enforcement seized $110,000 in U.S. currency. (*Id.*) At the time, both Martinez and Abbasi denied knowledge or ownership of the currency. (*Id.*) Later, in connection with the administrative forfeiture proceedings arising out of the traffic stop, Martinez asserted ownership of the $110,000. (*Id.* ¶¶ 2-3.) In support of his claim to the $110,000, Martinez submitted a loan agreement, dated June 10, 2019 between himself and Madden. (*Id.* ¶ 3.)

In December 2019 the Government filed the Nebraska Action seeking forfeiture of the currency as proceeds and/or facilitating property from the violation of 21 U.S.C. § 841(a). (*Id.* ¶ 4.) On January 3, 2020 Martinez again reasserted his claim to the seized currency based on the loan agreement, this time in the Nebraska Action. (*Id.* ¶ 5.) During his deposition on October 27, 2020 Martinez testified regarding his relationship with Madden. (*Id.* ¶ 7.) According to Martinez, Madden owns a consulting agency. (Martinez Dep. Tr. 44:3-13, Mot. for Order to Show Cause, Ex. 4, Dkt. No. 2-4.) Martinez first met Madden after serving as his Uber driver and later was hired by Madden to act as his driver on a regular basis. (*Id.* at 47:5-20.) Martinez testified that Madden

loaned him the $100,000 so Martinez could use the funds to purchase a home. (*Id.* at 47:21–48:28.) Martinez further explained that he drove Madden to the bank to withdraw the $100,000 cash for the loan. (*Id.* at 49:18–21.)

Based on this testimony, on December 4, 2020 the Government issued a subpoena to Madden (the "December 2020 Subpoena"). (Mot. for Order to Show Cause ¶ 8.) The December 2020 Subpoena sought six categories of documents, including Madden's email and phone communications with Martinez, as well as bank and tax records. (Dec. 2020 Subpoena at 4–5, Mot., Ex. B, Dkt. No. 5-2.) Because Madden resides in Chicago, the December 2020 Subpoena commanded he produce the requested documents at the Chicago Office for the United States Attorney for the Northern District of Illinois. (*Id.* at 1.) The December 2020 Subpoena also provided that if Madden produced electronic copies of his documents in advance of January 5, 2020 and certified to the authenticity of the produced documents, he would not need to appear for a deposition. (*Id.* at 5; Mot. for Order to Show Cause ¶ 10.)

In response Madden refused to produce documents and filed a motion to quash in the District of Nebraska. (Mot. for Order to Show Cause ¶ 14.) Madden's motion was denied for lack of jurisdiction. (*Id.*) Thereafter, Madden reached an agreement with the Government to produce documents on or before February 15, 2021.

(*Id*. ¶ 15.) Madden failed to meet this deadline and declined to propose a concrete timeline for compliance. (*Id.* ¶ 16–17.)

On February 22, 2021 the Government filed a motion for an order to show cause in this Court. On March 15, 2021 Madden provided written responses and objections to the December 2020 Subpoena claiming the requests were (1) unduly burdensome and overbroad; (2) duplicative of documents already in the Government's possession; and (3) non-existent, in that he had no responsive documents in his possession for a number of the requests. (Opp'n at 2, Dkt. No. 7.)

On March 19, 2021 the Government issued a second subpoena (the "March 2021 Subpoena") which narrowed the scope of its document requests in response to Madden's objections, and is the subject of the current motion. (*Id.* at 6.) The March 2021 Subpoena requests four categories of documents: (1) records and statements for all personal and business mobile phones or telephones from January 1, 2019 to the present, including documents reflecting communications with the phone number 773-573-2587; (2) documents reflecting or relating to communications with Julio Martinez and/or Ali Abbasi from January 1, 2018 to March 1, 2021; (3) Federal and State tax records for the tax years ending December 31, 2018, December 31, 2019, and December 31, 2020; and (4) banking records, other than from Byline Bank, from December 31, 2017 to

the present. (Mar. 2021 Subpoena at 3-4, Mot., Ex. D, Dkt. No 5-4.) On April 7, 2021 Madden filed this motion to quash the March 2021 Subpoena. (Dkt. No. 5.)

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 45(a) allows litigants to subpoena documents, electronically stored information and other tangible things in the custody or control of non-parties. FED. R. CIV. P. 45(a). Under Rule 45, a court must quash or modify a non-party subpoena if it (1) fails to allow a reasonable time to comply; (2) requires the non-party to travel more than 100 miles; (3) requires disclosure of privileged or other matter, if no exception or waiver applies; or (4) subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A)(i)-(iv). The party seeking to quash a subpoena under Rule 45(d)(3)(A) bears the burden of demonstrating that it is deficient for one or more of these reasons. *Malibu Media, LLC v. John Does 1-6,* 291 F.R.D. 191, 196 (N.D. Ill. 2013). As with other discovery issues, deciding whether to grant a motion to quash lies within the sound discretion of the district court. *See, e.g.*, *Sullivan v. Gurtner Plumbing, Inc.,* 2012 WL 896159, at *1 (N.D. Ill. Mar.13, 2012) (citing *United States v. Ashman,* 979 F.2d 469, 495 (7th Cir.1992)).

### III. <u>DISCUSSION</u>

Madden raises four challenges to the March 2021 Subpoena. According to Madden, the March 2021 Subpoena: (1) demands compliance beyond the geographical limits specified in Rule 45(c); (2) requires compliance which is unduly burdensome; (3) exceeds the scope of discovery and requests irrelevant information; and (4) requests information subject to the Fifth Amendment Privilege. The Court addresses each challenge below.

### A. Geographic Limits

Rule 45 permits a subpoena to "command a person attend a . . . deposition . . . within 100 miles of where the person resides, is employed or regularly transacts business in person." FED. R. CIV. P. 45(c). Madden first argues that the March 2021 Subpoena demands compliance beyond these geographic limits. According to Madden, because the March 2021 Subpoena calls for a virtual deposition conducted by Government attorneys in Nebraska, the deposition is being held in Nebraska. As Nebraska is more than 100 miles from his home in Chicago, conducting a virtual deposition from Nebraska violates Rule 45(c). In response, the Government argues that the March 2021 Subpoena comports with Rule 45 because it compels Madden to appear virtually from Chicago, which is less than 100 miles from his home. The Government also points to the routine use of virtual depositions during the ongoing pandemic as proof that the

Government's virtual participation from Nebraska does not violate Rule 45.

In response to COVID-19 litigants are increasingly relying on virtual depositions, although they are not yet routine in federal court proceedings. As a result, only a few district courts have grappled with whether Rule 45 revolves around the location of the deponent or the questioner. Very recently, the Southern District of New York held that compelling virtual testimony does not move a trial to the physical location of the witness. *Broumand v. Joseph,* 2021 WL 771387, at *10 (S.D. N.Y. 2021). In *Broumand,* the Court concluded that Rule 45 centered around the location of the questioner, not the witness and that "any other reading would render Rule 45(c)'s geographical limitations a nullity." *Id.* Other courts, however, have found that the relevant inquiry is the location of the witness. *See In re Newbrook Shipping Corp.,* 498 F.Supp. 3d 807, 816 (D. Md. 2020) ("Given the modification of the deposition notice to provide for a remote deposition over Zoom or other teleconferencing platform, the deposition notice no longer requires GMS or Sharma to travel more than 100 miles (or at all) to comply."); *see also Int'l Seaway Trading Corp. v. Target Corp.,* 2021 WL 672990, at *5 (D. Minn. Feb. 22, 2021) ("Virtual attendance of this nature is consistent with the plain language of Rule 45(c)(1)(A) because . . . [the witness] can comply with the

deposition from his home or anywhere else he chooses that is within 100 miles of his residence.")

While it is true that virtual testimony may make violations of Rule 45(c) less likely, the Court does not think that this causes the rule loses its meaning. Rule 45(c) does not limit the reach of a subpoena to only those residing within 100 miles of the pending litigation. Instead, Rule 45(c)'s geographic limits were crafted to protect third parties from the undue burden of traveling more than 100 miles to provide testimony or produce documents in a proceeding to which they are not a party. FED. R. CIV P. 45(c) advisory committee's note to 2013 amendment ("Rule 45(c)(1)(A) does not authorize a subpoena for trial to require a party or party officer to ***travel*** more than 100 miles." (emphasis added)).

Here, proceeding virtually with Madden in Chicago and some Government attorneys in Nebraska prevents the harm Rule 45(c) is meant to guard against. Madden's place of attendance for the subpoenaed deposition is the Chicago Office of the United States Attorney for the Northern District of Illinois. This is the same city in which Madden resides and less than 10 miles from his home. For the reasons outlined above, the fact that the Government attorneys leading the deposition will participate remotely from Nebraska does not change this analysis.

Furthermore, parties have proceeded virtually for 15 months, due to the threat posed by the ongoing COVID-19 pandemic. Given the continued risk and nationwide remote work arrangements, the Court separately concludes that for the health and safety of the parties, the Court will not require the Government attorneys from Nebraska to travel to Chicago when substantially the same result is available digitally. For these reasons the parties may conduct the deposition of Mr. Madden virtually, without requiring any Government attorneys from Nebraska to travel to Chicago. Madden and his counsel may work with the Government to determine whether the parties already located in Chicago will appear in person or remote.

### B. Relevance and Burden

Madden next raises two interrelated challenges, alleging that the March 2021 Subpoena is unduly burdensome and seeks irrelevant information beyond the permissible scope of discovery. Specifically, Madden argues that the March 2021 Subpoena requests an expansive set of records spanning four years, a majority of which are not in his control, would require significant effort to gather, and are duplicative of documents already in the Government's possession. Madden further argues that the documents are irrelevant to the to the Nebraska Action, because neither he nor any of the requested documents are referenced in the civil

forfeiture complaint. Madden contends that the loan agreement with Martinez does not reflect criminal activity and any such conclusion by the Government is "pure speculation." (Mot. at 7.) Madden also alleges that the Government is improperly using civil discovery to benefit a parallel criminal investigation.

In response, the Government argues that the March 2021 Subpoena significantly narrows the requests from the original December 2020 Subpoena, including imposing narrower time frames and carving out documents already produced in connection with the Nebraska Action. The Government contends that the narrowed set of requests can be easily gathered and will impose little to no expense on Madden. The Government further argues that the requested documents are directly relevant to the nature of the relationship between Madden and Martinez and the source of the at-issue funds.

Rule 45 does not "exempt [non-parties] from the basic obligation of all citizens to provide evidence of which they are capable upon appropriate request." *Uppal v. Rosalind Franklin Univ. of Med. & Sci.,* 124 F.Supp. 3d 811, 813 (N.D. Ill. 2015). Instead, Rule 45 protects non-parties from any undue burden associated with this obligation. To determine whether a subpoena imposes an undue burden, the Court considers "whether: (1) the information requested is relevant; (2) the party requesting the information has a substantial need for the documents; (3) the

document request is overly broad; (4) the time period the request covers is reasonable; (5) the request is sufficiently particular; and (6) whether compliance with the request would, in fact, impose a burden on the subpoenaed party." *Little v. JB Pritzker for Governor,* 2020 WL 1939358, at *2 (N.D. Ill. Apr. 22, 2020). The Court considers each of these factors below.

### 1. Relevance & Need for the Documents

Turning first to relevance and the Government's need for the documents, the crux of the Nebraska Action is that the at-issue $110,000 is allegedly the proceeds of criminal activity. Madden is correct that the operative complaint in that case does not mention him directly. That fact, however, is not dispositive of his relationship to the case. Martinez's claim to the funds is based on his testimony that Madden loaned him money, given their professional relationship. (Martinez Dep. Tr. at 48:2–24.) Martinez further testified that he did not know the source of the funds he received from Madden. (*Id.* at 49:9–12.) The Government's requests for communications between Martinez and Madden and Madden's financial records go to the veracity of this testimony and further explore topics upon which Martinez could not testify. This information is thus relevant to Martinez's defense against the seizure and therefore well within permissible scope of discovery under Federal Rule of Civil Procedure 26. FED. R. CIV.

P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.")

The Government is not required to prove its theory that the funds were the proceeds of criminal activity before seeking discovery from Madden. To the contrary, the entire purpose of discovery is fact-finding: to pursue evidence that may later be used to prove the Government's allegations. Moreover, because Martinez identified Madden as the source of the funds, and Madden does not dispute this claim, the Government has a substantial need to continue to trace this substantial amount of cash to determine its lawful or criminal origin. This is particularly true where information from Madden's bank indicates that he did not simply withdraw $100,000 in June of 2019. (Mot. for Order to Show Cause ¶ 13.) Instead Madden exchanged $100,000 in small bills for $100,000 in one hundred dollars bills. (*Id.*) It is believed that this exchanged $100,000 was given to Martinez and later recovered by Nebraska law enforcement. Based on this information, the Government's pursuit of additional financial information from Madden is necessary to determine the source of the at-issue $100,000. And because resolution of this issue is essential to the civil forfeiture action, it is not, as Madden alleges without support, an effort by the Government to use broad civil discovery

mechanisms to benefit a parallel criminal investigation. *See Smith v. Bravo,* 2000 WL 1051855, *4 (N.D. Ill. July 28, 2000) (concluding that overlap of interests in parallel civil and criminal actions is not on its own evidence misuse of civil discovery). For these reasons the March 2021 Subpoena requests are relevant, and the Government has a substantial need for the information therein.

### 2. *Scope, Time Period, and Particularity*

The Court next considers whether the requests are overbroad, cover a reasonable time period, and are sufficiently particular. The March 2021 Subpoena lists four sets of documents, each requesting specific, identifiable documents. Requests 1 and 2 relate to communications between Madden and Martinez or Abbasi, including phone records, emails, text messages from January 1, 2018 to March 1, 2021. These requests identify with sufficient particularity the records being sought, including phone bills, statements, call and text logs, emails, contracts or agreements, and demand letters. While these records are potentially voluminous, the request itself is not overbroad or nor is the time frame unreasonable.

The same is true regarding the requested financial data. Request 3 seeks Madden's tax records for 2018-20. This is a narrow, particular request covering just three tax years. Request 4 is the largest request, seeking all banking and financial records from

- 13 -

December 31, 2017 to the present. Like Requests 1 and 2, the fact that this request may yield a large volume of documents does not make the request overbroad. Instead, the Government has identified the particular records it is requesting and carved out records from Byline Bank, which they have already received from the bank in question. The Court concludes that Request 4 is not overbroad and its three-and half-year time frame is not unreasonable.

### 3. Burden

Finally, the Court looks at whether compliance with the subpoena will impose a burden on Madden. Compliance with any subpoena will impose some burden, as it takes time to collect responsive documents. The operative question is therefore whether the burden imposed is proportional to the needs of the case. *SPS Technologies, LLC v. Boeing Co.,* 2019 WL 2409601, at *5 (N.D. Ill. June 7, 2019). Madden offers no evidence that the burden of collecting these documents is so significant to merit quashing or modifying this request. The Court anticipates that compliance with the March 2021 Subpoena will require Madden to run basic email searches for communications with just two individuals, Martinez and Abbasi. Assuming that Madden knows the email or emails used to communicate with these individuals, running such searches imposes a low burden that is proportional to the needs of this case. The Government also requests specific files that evidence Madden's

relationship with Martinez. Absent further information regarding Madden's position, the Court concludes that these are similarly proportional. The Government's tax records for three recent years is also proportional to the needs of the case. If Madden does not prepare his own tax returns and is not currently in possession of these documents, he may easily access them from whomever prepares his taxes.

The remaining requests seek Madden's banking and phone records. Madden's burden argument hinges on the fact that he is not in possession of a majority of these records and thus it would require an extensive effort to gather these materials. This conclusory statement is insufficient to support a motion to quash. Madden has not alleged any facts that show exactly how collecting these records from his cell phone provider(s) and financial institutions other than Byline Bank will actually impose a substantial burden. Accordingly, the burden is not outweighed by the needs of the case. For these reasons, the Court finds that any burden Madden may experience is proportional to the needs of the Nebraska Action.

Having weighed all the factors, the March 2021 Subpoena requests documents relevant to the Nebraska Action and does not impose an undue burden on Madden.

## C.  Fifth Amendment Privilege

Madden argues that the March 2021 Subpoena seeks documents protected by his Fifth Amendment privilege. According to Madden, because the Nebraska Action alleges that the $110,000 are proceeds of criminal activity, he may invoke his Fifth Amendment right against self-incrimination. The Government agrees that Madden may invoke his Fifth Amendment right but argues that Madden must provide documentation regarding the documents being withheld and the privilege basis for each.

Madden may invoke his Fifth Amendment right in a civil matter, "where the answers might incriminate him in future criminal proceedings." *See LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 389 (7th Cir. 1995). Here, the Government's allegations that the at-issue $110,000 is the proceeds of criminal activity. As a result, there is at least some risk that the compelled responses to the March 22021 Subpoena could be used against Madden in a criminal prosecution related to the suspected criminal activity. Madden's assertion that he will invoke this privilege against self-incrimination is not, however, a reason to quash the subpoena. At the time of his deposition, Madden may invoke the Fifth Amendment in response to questions posed by the Government. That he will do so does not obviate his responsibility to sit for a properly subpoenaed deposition.

As to the requested documents, "in order to claim the privilege, [Madden] must demonstrate that the act of producing the requested records would have both an incriminating effect and a testimonial aspect." *United States v. Duncan,* 704 F.Supp. 820, 821–22 (N.D. Ill. 1989). Madden's blanket assertion in this motion is insufficient to meet this burden. Instead, Madden must present for *in camera* review the documents he intends to withhold in response to the March 2021 Subpoena, with an accompanying explanation of how the act of producing such documents has an incriminating effect and a testimonial aspect. Based on this submission, Court will determine whether Madden's invocation is justified, based on the facts and circumstances of this case. *Id.*

Madden is instructed to respond to the March 2021 Subpoena on or before July 12, 2021. Should Madden invoke the Fifth Amendment in response to any of the document requests in the March 2021 Subpoena, the Court orders that he serve the Government with written responses explaining the basis for each invocation. Madden must also submit to this Court his written responses, with a further explanation how production in response to each impacted request is incriminating and testimonial. This written response shall be submitted, *in camera,* to chambers no later than July 12, 2021.

## IV.  <u>CONCLUSION</u>

For the reasons set forth herein, the Court denies Madden's motion to quash (Dkt. No. 5.) and denies without prejudice the Government's motion for an order to show cause (Dkt. No. 2).


**IT IS SO ORDERED.**


_____
        Harry D. Leinenweber, Judge
        United States District Court

Dated: 6/10/2021

- 18 -